Robert S. **CALVERT**, Comptroller, et al., Petitioners,

v.

The **TEXAS PIPE LINE COMPANY** et al., Respondents.

No. B–4763.

Supreme Court of Texas.

Dec. 30, 1974.

Rehearing Denied Feb. 7, 1975.

John L. Hill, Atty. Gen., Gordon C. Cass, Asst. Atty. Gen., Austin, for petitioners.

Donald M. Bishop, Sr., Houston, Tax Atty., Texaco, Inc., for respondents.

DANIEL, Justice.

This is a suit in which Texas Pipe Line Company and five other corporations seek to recover corporation franchise taxes paid under protest in July of 1971.[1] Payments of the additional franchise taxes were demanded by the State Comptroller of Public Accounts for the period of July 1, 1971, through April 30, 1972, under the provisions of House Bill 730, 62nd Legislature.

The trial court, sitting without a jury, rendered judgment against the plaintiffs, sometimes collectively referred to herein as Texas Pipe Line, and in favor of the State Comptroller, State Treasurer and Attorney General. The court of civil appeals reversed and rendered judgment for Texas Pipe Line, et al., 510 S.W.2d 168. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

■ The statute involved is Article 12.-20, Chapter 12, Title 122A, Taxation-General, Vernon's Ann.Revised Civil Statutes of Texas, as amended by H.B. 730, Chapter 292, Acts of the 62nd Legislature, effective July 1, 1971. As thus amended, Article 12.20 provided:

"(1) In addition to all other taxes, there is hereby levied on all corporations paying a franchise tax under the provisions of this Chapter for the preceding fiscal year as shown in the report required to be filed with the Comptroller of Public Accounts between January 1 and May 1, 1971 (or the initial or first year report required to be filed with the Comptroller of Public Accounts), under the provisions of this Chapter an additional franchise tax for the privilege of doing business in Texas in corporate form for the period beginning on the effective date of this Act, and ending April 30, 1972.

"(2) The additional franchise tax levied by this Article shall be computed by multiplying the franchise tax due and payable under the provisions of Article 12.01, except Section (1)(a)(ii), and Article 12.19 by 45.45 percent.

"(3) The additional franchise tax levied by this Article shall be paid to the Comptroller of Public Accounts within

1. Other plaintiffs who are respondents here are Sabine Pipe Line Company, Seaboard Pipe Line Company, Texas-New Mexico Pipe Line Company, Inc., and Jefferson Chemical Company.

thirty (30) days after the effective date of this Act. If any corporation fails to pay the additional tax levied by this Article within thirty (30) days after the effective date of this Act, the right of such corporation to do business in this State shall be forfeited on April 1, 1972, which forfeiture shall be consummated without judicial ascertainment by the Comptroller of Public Accounts in the same manner as provided for forfeiture in this Chapter, and provided further that such defaulting corporation shall be subject to the same penalties, liens and conditions as provided in this Chapter.

"(4) The Comptroller of Public Accounts shall have the right to make and promulgate rules and regulations and to prescribe and mail forms and notices necessary for the efficient and effective administration of the additional franchise tax levied by this Article.

"(5) The additional franchise tax levied by this Article shall expire on April 30, 1972."

In 1969 the Legislature had previously amended the same Article, using similar language, to provide a temporary additional tax.[2] The first five lines of the 1969 and 1971 amendments are identical except for the change in the years. The 1969 amendment referred to the report as being required to be filed "between January 1 and May 1, 1969," while the 1971 amendment read "between January 1 and May 1, 1971," obviously tracking the month and day language of the previous (and then existing) amendment. In the meantime, effective September 1, 1969, Article 12.08 of the same Chapter was amended to extend the time for filing reports of regular corporations to June 15 of each year.[3] Therefore, when the above quoted 1971 amendment to Article 12.20 was enacted, there were no corporations which were required to file a report with the Comptroller between January 1 and May 1, 1971. The Legislature's subsequent use of the words "between January 1 and May 1" in referring to reports required to be filed, whether intentional or by mistake, is the whole basis for Texas Pipe Line's contention that it and other regular (as distinguished from first year) corporations are not liable for the additional tax levied in 1971. It contends that the plain words and dates referring to the reports are controlling over all other language of the tax levying statute and that it and other regular corporations are excluded from its terms because they were not required to file a report with the Comptroller between January 1 and May 1, 1971.

The State Comptroller interpreted the 1971 amendment of Article 12.20 as levying the additional tax "on all corporations paying a franchise tax under the provisions of this Chapter for the preceding fiscal year" as shown by the reports actually required to be filed "under the provisions of this Chapter" even though the amendment erroneously recited the reporting dates which were then in effect. Accordingly, he demanded payment by all of the 84,124 regular corporations which paid a franchise tax under the provisions of Chapter 12 for the preceding fiscal year as shown in the report required to be filed with him "under the provisions of this Chapter" between January 1 and June 15, 1971, as well as the 4,571 initial or first year corporations referred to in the amendment. The Attorney General strongly insists that this departmental interpretation was correct and cites the Comptroller's Report for 1971 showing that the additional tax in the total sum of $29,211,964 was paid by approximately 87,300 corporations, with only 77 protests of payments. The total amount of all payments under protest was slightly over $4 million.

Chapter 12 of Title 122A, Taxation-General, relates to and is entitled "Franchise Tax." On the relevant dates this Chapter

---

2. Article 3, H.B. 4, 61st Leg., Second C.S., Ch. 1, Texas Session Laws 1969.

3. Acts 1969, 61st Leg., Ch. 801, § 6. See footnote 4 for complete text.

required only two types of reports which relate to Article 12.20: (1) "regular" corporations which have conducted business in the State for more than a year, must file reports between January 1 and June 15 pursuant to Article 12.08;[4] and (2) "initial or first year" corporations must file within 90 days after their first year of operations in the State.[5]

Thus, as heretofore stated, no corporation was required to file a Texas franchise tax report between January 1 and May 1, 1971, unless the reporting date of some of the "initial or first-year corporations" happened by circumstance to fall within that period. The Comptroller's report for the year indicates that this so happened with reference to 4,571 of the 88,695 corporations doing business in Texas in 1971. Texas Pipe Line strongly contends that the 1971 amendment is effective only as to this approximately five percent of the corporations doing business in Texas, and that the additional tax did not apply to it and the remaining 95% of the corporations operating in Texas in 1971.

Texas Pipe Line argues that as to regular corporations the 1971 amendment levied the tax only against those which were required to file a report with the Comptroller between January 1 and May 1, 1971, which number is zero. Its construction of the statute would ignore the controlling tax levying language "on all corporations paying a franchise tax under the provisions of this Chapter for the preceding fiscal year as shown in the report required to be filed with the Comptroller of Public Accounts . . . under the provisions of this Chapter," and isolate for controlling effect the intervening erroneous descriptive words "between January 1 and May 1, 1971." If the Legislature had used only this isolated descriptive language and said that the additional tax was levied upon all corporations required to file a report between January 1 and May 1, 1971 (or the initial or first year report), we could understand and agree with Texas Pipe Line's interpretation. The Legislature, however, did not levy or limit the tax in any such fashion. On the contrary, it expressed the clear intention that this additional tax was to apply "to all corporations paying a franchise tax under the provisions of this Chapter for the preceding fiscal year." The record shows that Texas Pipe Line and the other plaintiff corporations did pay a franchise tax under this Chapter for the preceding fiscal year and that they filed reports as required by Article 12.08 for the year of 1971.

■ The fundamental and dominant rule controlling the construction of a statute is to ascertain if possible the intention of the Legislature expressed therein. Sec. 6, Article 10, Vernon's Ann.Revised Civil Statutes. In Calvert v. British-American Oil Producing Co., 397 S.W.2d 839 (Tex. 1965), at 842 this Court said:

"Article 10, Vernon's Annotated Civil Statutes, provides general rules for construing all civil statutory enactments. The article provides that the provisions of statutes shall be liberally construed with a view to effect their objects. The courts necessarily look diligently for the

---

4. "Art. 12.08   Report of Corporation

"(1) Except as herein provided all corporations required to pay an annual franchise tax shall, between January first and June 15 of each year, make a report to the Comptroller of Public Accounts on forms furnished by that officer, showing the condition of such corporation on the last day of the corporation's preceding fiscal year.

"(2) The report shall also contain any other information concerning the corporation that the Comptroller of Public Accounts shall direct."

5. "Art. 12.09   Initial Reports

"Where a domestic corporation is chartered in this State or where a foreign corporation is granted a certificate of authority to do business in Texas it shall file its first report within ninety (90) days from the expiration of one (1) year from the date such charter was filed or certificate granted, as the case may be, showing its condition as of the end of the month nearest the end of such first year."

intention of the Legislature as the intention of the Legislature is the dominant consideration in construing a statute. See State v. Dyer, 145 Tex. 586, 200 S. W.2d 813 (1947); McInery v. City of Galveston, 58 Tex. 334 (1883); City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951)."

■ An equally fundamental rule of statutory construction is that the intention of the Legislature must be ascertained from the entire Act, and not from isolated portions thereof. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W. 2d 273 (1951). This rule is applicable alike to tax statutes, where a stricter construction is otherwise given in favor of the taxpayer if doubt about its application still remains after dominant rules of construction have been applied. Pacific Co. v. Johnson, 285 U.S. 480, 495, 52 S.Ct. 424, 76 L.Ed. 893; Sutherland, Statutory Construction, Vol. 3, § 66.02 (4th ed.)

When Article 12.20 is considered as a whole, along with the entire H.B. 730, of which it was a part, and the provisions of the Chapter to which it specifically refers, there is no doubt about three intrinsic and controlling matters which govern its interpretation: (1) that the Legislature intended and by its language provided that the additional tax was levied on all corporations, both regular and initial, which paid a franchise tax "under the provisions of this Chapter for the preceding fiscal year as shown in the report required to be filed . . . under the provisions of this Chapter"; (2) that the erroneous dates "between January 1, and May 1, 1971" were only descriptive surplusage which did not affect or limit the taxing language or coverage of the statute; and (3) that any confusion caused by these descriptive dates was clearly dissipated by reference to the reports as being required to be filed "under the provisions of this Chapter." Article 12.08 of the Chapter sets forth the correct dates for regular corporations and Article 12.09 furnishes the same information with respect to initial or first year corporations.

House Bill 730 was the general tax law for 1971. Its caption recited that it was "An Act relating to raising revenue for the support of the state government." The specific portion of the caption relating to corporate franchise taxes stated: "amending Article 12.20 and Sections (1) and (2) of Article 12.211, Title 122A, as amended, to increase the corporate franchise tax." There was no indication in the caption that the increase would apply only to initial or first year corporations, and, as heretofore stated, the plain language of the amendment to Article 12.20 contains no such limitation. The taxing language is geared to an additional levy on all corporations paying a franchise tax under the provisions of the Chapter for the preceding fiscal year and required to file a report under the provisions of the Chapter.

The incidental and erroneous descriptive words concerning the dates of the required report were not words of limitation and were wholly unnecessary to an effective levy of the tax on Texas Pipe Line and other regular corporations. They constituted surplusage which should be disregarded in order to carry out the plain intent and meaning of the amendment rather than to create an absurdity, an uncertainty, or otherwise defeat its purposes. City of Mason v. West Texas Utilities, 150 Tex. 18, 237 S.W.2d 273 (1951); State v. Standard Oil Company, 130 Tex. 313, 107 S.W.2d 550 (1937); Edwards v. Morton, 92 Tex. 152, 46 S.W. 792 (1898); American Federation of Labor v. Mann, 188 S.W.2d 276 (Tex.Civ.App.1945, no writ); Sutherland, Statutory Construction, Vol. 3, § 47.37 (4th ed.).

Accordingly, the judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

WALKER, J., not sitting.