# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-00-00055-CV

---

**The Upjohn Company, Appellant**

**v.**

**Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. 98-03809, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING**

---

This is a franchise tax case.[1] The Upjohn Company sued the Comptroller[2] for a refund of $1,391,740.40 in franchise taxes and interest paid under protest on receipts generated by its Texas sales of drugs and medicines. Both parties filed motions for summary judgment. The district court granted the Comptroller's motion and denied Upjohn's motion.

---

[1]  *See* Tex. Tax Code Ann. §§ 171.001-.687 (West 1992 & Supp. 2000) (the "Franchise Tax Act").

[2]  This appeal was originally filed in the names of the predecessors to the present Comptroller and Attorney General. We have substituted the current holders of those offices as the correct parties to this proceeding. *See* Tex. R. App. P. 7.2(a). Because their interests do not diverge in this case, for convenience, we will refer to them collectively as "the Comptroller."

As one of its issues on appeal, Upjohn asserts that the Comptroller may not rely on a defense of sovereign immunity. The Comptroller responds that it does not assert sovereign immunity. The Comptroller and the Attorney General are statutory defendants in tax refund suits. *See* Tex. Tax Code Ann. § 112.151(b) (West 1992 & Supp. 2000). The parties thus agree that the district court had jurisdiction.

The question in this case is whether section 171.104 of the Texas Tax Code permits a taxpayer to exclude receipts generated from its Texas sales of drugs and medicines when its franchise taxes are based on either taxable capital or earned surplus. Tex. Tax Code Ann. § 171.104 (West 1992 & Supp. 2000). We hold that, in calculating its earned surplus gross receipts apportionment factor, Upjohn may not exclude these sales from its gross receipts. We affirm the district court's judgment.

***Franchise Tax Background***

A franchise tax is imposed on corporations for the privilege of doing business in Texas. *See* Tex. Tax Code Ann. § 171.001(a)(1) (West 1992 & Supp. 2000); *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex. 1979). The franchise tax is imposed annually on each corporation that is incorporated in Texas or that conducts business in Texas. *See* Tex. Tax Code Ann. § 171.001 (West 1992 & Supp. 2000). A corporation's franchise tax liability is based on the business done by the corporation during its last accounting period, which ends in the year before the tax is due. *See id.* §§ 171.151, .153, .1532.

Prior to 1992, the franchise tax was based solely on a corporation's taxable capital.[3] Because the franchise tax was based solely on taxable capital, capital-intensive industries bore the

___

[3] A corporation's taxable capital consists of stated capital and surplus. *See* Tex. Tax Code Ann. § 171.101(a)(1) (West 1992). "Stated capital" is defined by reference to the Texas Business Corporation Act. Tex. Bus. Corp. Act Ann. art. 1.02(24) (West Supp. 2000) (defining stated capital as the sum of all shares of the corporation having a par value that have been issued and the consideration fixed by the corporation for all shares without par value that have been issued). The Franchise Tax Act defines surplus as net assets minus stated capital. *See* Tex. Tax Code Ann. § 171.109(a)(1) (West 1992 & Supp. 2000). Net assets are total assets minus total debts. *See id.* § 171.109(a)(2).

brunt of the tax, even in unprofitable years. *See General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 863 (Tex. App.—Austin 1996, writ denied). On the other hand, service industries, even those generating large profits, did not pay as much, unless they were also capital intensive. *See id.*

In 1991, the Texas Legislature amended the Franchise Tax Act to add earned surplus as an additional tax base from which to calculate the franchise tax. *See* Act of Aug. 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.02, 1991 Tex. Gen. Laws 134, 152. The amendment to the franchise tax changed the tax base to *the greater of* a corporation's net taxable capital apportioned to Texas *or* the corporation's taxable earned surplus apportioned to Texas. *See* Tex. Tax Code Ann. § 171.002 (West 1992 & Supp. 2000).[4] Thus, the 1991 amendment to the franchise tax reapportioned the tax base.

The tax is calculated by multiplying the franchise tax base by the franchise tax rate. *See id.* Upjohn's taxable capital and earned surplus are subject to franchise tax in Texas based on the percentage of its business apportioned to Texas multiplied by the appropriate tax rate. *See id.* § 171.106. The determination of the portion of the tax base attributable to Texas, the "apportionment ratio," is calculated by dividing the corporation's gross receipts attributable to Texas by the

---

[4] "Earned surplus" is essentially adjusted reportable federal net income, or net profit. *See* Tex. Tax Code Ann. § 171.110(a)(1) (West 1992 & Supp. 2000); *see also General Dynamics Corp.*, 919 S.W.2d at 864 n.4 (citing *Southern Realty Corp. v. McCallum*, 65 F.2d 934, 935-36 (5th Cir.), *cert. denied*, 290 U.S. 692 (1933)) (acknowledging that past income is used to measure privilege of doing business in current year because past wealth is financial starting point for current year's business).

corporation's total gross receipts.[5] *See id.* The tax on the higher of the calculation of taxable capital or earned surplus determines Upjohn's franchise tax obligation. *See id.* §§ 171.002, .106, .110.

### *The Controversy*

In calculating its franchise tax based on its earned surplus apportioned to Texas, Upjohn, an international pharmaceutical corporation, had excluded receipts generated by its Texas sales of certain drugs and medicines from the numerator of its gross receipts apportionment factor. Upjohn was audited by the Comptroller for the report years 1992 through 1995. As a result of the audit, the auditor increased Upjohn's Texas receipts, i.e., the numerator of the fraction. The inclusion of the receipts in the numerator of Upjohn's gross receipts apportionment factor resulted in a tax deficiency of $1,391,740.40.

As a result, Upjohn paid franchise tax in the amount of $956,135.84 and $435,604.56 in interest under protest. *See* Tex. Tax Code Ann. §§ 112.051-.060 (West 1992 & Supp. 2000). Upjohn filed suit against the Comptroller in an effort to recoup the protested franchise tax. The district court granted the Comptroller's motion for summary judgment, and Upjohn appeals to this Court.

---

[5] Texas uses an apportionment formula in the form of a fraction to calculate a corporation's Texas business as follows: Texas receipts/Everywhere receipts. Thus, the numerator of the formula consists of gross receipts from Texas business, while the denominator consists of gross receipts from all of the corporation's business. *See* Tex. Tax Code Ann. §§ 171.103, .105, .112 (West 1992 & Supp. 2000); *see also National Bancshares Corp.*, 584 S.W.2d at 270 (describing operation of the apportionment formula).

In this appeal, Upjohn contends that section 171.104 of the Texas Tax Code provides for the exclusion of drug and medicine receipts from gross receipts for purposes of apportioning *both* taxable capital and earned surplus.

## DISCUSSION

The parties do not dispute the facts material to this case. Consequently, the propriety of summary judgment is a question of law. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). We therefore review the district court's decision *de novo* to determine whether the Comptroller was entitled to judgment as a matter of law. *See id.*; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Where both parties file a motion for summary judgment, and one is granted and one is denied, we determine all questions presented and render such judgment as the trial court should have rendered. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997).

### *Tax Code Section 171.104*

The section at the heart of this dispute, Tax Code section 171.104, provides for the deduction of certain drug and medicine receipts from gross receipts as follows:

Gross Receipts From Business Done in Texas: Deduction for Food and Medicine Receipts

A corporation may deduct from its receipts includable under Section 171.103(1) of this code the amount of the corporation's receipts from sales of the following items, if the items are shipped from outside this state and the receipts would be includable under Section 171.103(1) of this code in the absence of this section:

(1) food that is exempted from the Limited Sales, Excise, and Use Tax Act by Section 151.314(a) of this code; and

(2) health care supplies that are exempted from the Limited Sales, Excise, and Use Tax Act by Section 151.313 of this code.

Tex. Tax Code Ann. § 171.104. The section specifically referenced, section 171.103, is entitled "Determination of Gross Receipts From Business Done in this State for *Taxable Capital*" and defines the categories of receipts that are included in gross receipts for purposes of calculating taxable capital. *Id.* § 171.103 (West 1992 & Supp. 2000) (emphasis added). Subsection (1) of that section provides for including in the apportionment ratio numerator for taxable capital purposes receipts from "each sale of tangible personal property if the property is delivered or shipped to a buyer in [Texas]." *Id.* § 171.103(1).

Section 171.1032, entitled "Determination of Gross Receipts From Business Done in this State for *Taxable Earned Surplus*," defines the type of receipts included in gross receipts for purposes of calculating taxable earned surplus. *Id.* § 171.1032. Its subsection (1) contains language identical to that of subsection (1) of section 171.103 with regard to "tangible personal property." *Compare id.* § 171.1032(1), *with id.* § 171.103(1).

Because the sections defining gross receipts for calculation of both taxable capital and earned surplus contain identical subsections relating to the "sale of tangible personal property," Upjohn argues that section 171.104 is "unintentionally worded" to specifically refer only to the apportionment ratio used for calculating taxable capital and not the apportionment ratio used to calculate earned surplus. Upjohn contends that section 171.104 excludes drug and medicine receipts

6

from the numerator of the gross receipts factor for purposes of computing *both* earned surplus and taxable capital. The Comptroller contends that section 171.104 applies only to taxable capital and that the language is clear and unambiguous on its face.

As a preliminary matter, Upjohn urges that because the tax in question is an imposition of a tax rather than an exemption, it should be liberally construed *in favor of* the taxpayer. Whether we characterize the tax as an imposition of a tax or an exemption from tax determines who bears the burden of proving its application. The Legislature enacts statutes imposing franchise tax purely for revenue purposes. *See Federal Crude Oil Co. v. Yount-Lee Oil Co.*, 52 S.W.2d 56, 61 (Tex. 1932). We therefore liberally construe franchise tax statutes so as to effectuate their purpose. *See id.*; *see also Isbell v. Gulf Union Oil Co.*, 209 S.W.2d 762, 764 (Tex. 1948); *Davis v. State*, 846 S.W.2d 564, 570 (Tex. App.—Austin 1993, no writ). Statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *See Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 478 (Tex. App.—Austin 1997, no pet.). Deductions and exemptions, on the other hand, are matters of legislative "grace." *See Commissioner of Internal Revenue v. Sullivan*, 356 U.S. 27, 28 (1958). "[T]o promote uniformity and equality in taxation, we construe tax exemptions—and provisions tantamount to tax exemptions—strictly against the taxpayer and in favor of the taxing authority."[6] *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.—Austin

---

[6] We apply a contrary rule only if doubt about the *applicability* of a tax remains after we employ the dominant rules of statutory construction. In that circumstance, we resolve ambiguities in favor of the taxpayer. *See Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974); *Wilburn v. State*, 824 S.W.2d 755, 760 (Tex. App.—Austin 1992, no writ). Upjohn does not dispute that its business comes within the scope of the franchise tax statute.

7

1998, pet denied); *accord National Bancshares Corp.*, 584 S.W.2d at 271-72. Because section 171.104 is part of an apportionment formula, which determines the part of the tax base that is properly attributable to the State, Upjohn contends that it should be considered an "imposition type item" and must be strictly construed against the Comptroller.[7]

Upjohn does not dispute that it is subject to the franchise tax. The issue here is whether, in applying the franchise tax to Upjohn, Upjohn is entitled to the deduction contained in section 171.104. Tax provisions authorizing a deduction are tantamount to an exemption. *National Bancshares Corp.*, 584 S.W.2d at 272; *Texas Utils. Elec. Co.*, 962 S.W.2d at 726; *Davis v. Fair*, 707 S.W.2d 711, 716 (Tex. App.— Eastland 1986, no writ) (using the terms "deduction" and "exemption" interchangeably for purposes of employing rule of construction); *American Bank & Trust Co. v. Dallas County*, 679 S.W.2d 566, 574 (Tex. App.—Dallas 1984, no writ).

Moreover, section 171.104 specifically allows a corporation to "deduct" certain receipts from its gross receipts. Tex. Tax Code Ann. § 171.104. Upjohn has not cited to any case in which a statute allowing for a deduction by its terms has been treated as an imposition of a tax rather than a deduction or exemption from the tax. We conclude that the provision at issue in this

---

[7] In support of its position, Upjohn cites cases from Connecticut and Maryland concluding that an apportionment formula deals with the imposition of a tax. Upjohn acknowledges that these cases are not binding precedent and the language of the statutes in the cases cited do not refer to a deduction as does the language of section 171.104. *See B. F. Goodrich Co. v. Dubno*, 490 A.2d 991 (Conn. 1985); *AMAX v. Gropo*, 550 A.2d 13 (Conn. App. Ct. 1988); *CIGNA Corp. v. Bannon*, No. CV87-0335103S, 1991 WL 88046 (Conn. Super. Ct. Apr. 29, 1991); *Comptroller v. Gannett Co.*, 741 A.2d 1130 (Md. 1999).

case, one allowing a deduction for certain receipts, is tantamount to an exemption and must be strictly construed in favor of the State.

In further construing this statute, we are mindful of several rules of statutory construction. First, the fundamental and dominant rule of construction requires us to ascertain the Legislature's intent in enacting the statute and to effectuate that intent. *See Union Bankers Ins. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex. 1974). The Legislature's intent should be determined by examining the language used in the statute. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998). We look to the entire act in determining the Legislature's intent with respect to a specific provision. *See Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981); *Wilburn v. State*, 824 S.W.2d 755, 760 (Tex. App.—Austin 1992, no writ). Every word, phrase, and expression in a statute should be read as if it were deliberately chosen for a purpose. *See State v. Evangelical Lutheran Good Samaritan Soc'y*, 981 S.W.2d 509, 511 (Tex. App.—Austin 1998, no pet.). Moreover, every word excluded from a statute must be presumed to have been excluded for a purpose. *See City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.—Austin 1996), *aff'd*, 7 S.W.3d 109 (Tex. 1999) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)).

The supreme court has noted that, in construing statutes:

Courts must take statutes as they find them. . . . They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. . . . They are not responsible for omissions

in legislation. They are responsible for a true and fair interpretation of the written law.

*Republicbank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985). There is generally an inference that omissions in a statute are intentional. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25 (6th ed. 2000). Because canons of statutory construction may be cited to support conflicting interpretations of the disputed statute, we look to "[t]he good sense of the situation and a *simple* construction of the available language to achieve that sense, *by tenable means, out of the statutory language.*"[8]

Thus, we begin our analysis with an examination of the language of section 171.104. The language used by the Legislature in section 171.104 is clear and unequivocal. Referring specifically to section 171.103 dealing with taxable capital, section 171.104 is silent as to earned surplus calculations. We may not simply ignore the explicit incorporation of the single section. Because the disputed provision expressly cross-references section 171.103 relating to the determination of taxable capital, and does not cross-reference section 171.1032 relating to the determination of earned surplus, we conclude that the plain language of the statute does not support Upjohn's position.

Under the rules of statutory construction, we need not construe unambiguous statutes. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.02 (6th ed. 2000). Recognizing,

---

[8] Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed*, 3 Vand. L. Rev. 395, 401 (1950).

however, that the issue is a complex and important one, we turn to the legislative history of the related sections.

Because changes to the tax statutes were made by the Legislature when the earned surplus component was added in 1991, Upjohn urges that section 171.104 should be extended to include earned surplus calculations because it was intended to apply to all tax bases. The legislative history of section 171.104, however, fails to support that conclusion. Prior to the 1991 amendments, gross receipts from business done in this State included receipts from "each sale of tangible personal property if the property is delivered or shipped to a buyer in this state. . . ." Tex. Tax Code Ann. § 171.103(1). The 1991 amendment changed the caption of that section to add "for taxable capital"; the introductory phrase, "In apportioning taxable capital" was also added. Section 171.103(1) then read as follows:

> § 171.103. Determination of Gross Receipts From Business Done in this State *for Taxable Capital*
>
> *In apportioning taxable capital,* the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:
>
> (1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state . . . .

*Id.* (emphasis added). At the same time, an entirely new section pertaining to taxable earned surplus was added as Tax Code section 171.1032:

> § 171.1032. Determination of Gross Receipts From Business Done in this State *for Taxable Earned Surplus*

11

> (a) ***In apportioning taxable earned surplus***, the gross receipts of a corporation from its business done in this state is the sum of the corporation's receipts from:
>
> (1) each sale of tangible personal property if the property is delivered or shipped to a buyer in this state . . . .

*Id.* § 171.1032(a)(1) (emphasis added). No change was made at the time to section 171.104 to add a reference to section 171.1032. Moreover, subsequent to the 1991 amendments to sections 171.103 and 171.1032, no changes were made to section 171.104.

We find no basis for extending section 171.104 to earned surplus as Upjohn urges us to do. Had the Legislature intended for the exclusion to apply to both the taxable capital and earned surplus components of the franchise tax, it could easily have amended the exemption provision to expressly refer to section 171.1032(a)(1) as well as section 171.103(1). This the Legislature did not do. The legislative intent becomes even more clear when we consider that the Legislature is presumed to enact a statute with complete knowledge of the existing law and with reference to it. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 888 S.W.2d 921, 926 (Tex. App.—Austin 1994, writ denied).

Upjohn argues forcefully that public policy favors its interpretation of the exemption provision. It asserts that its interpretation of the statute—to ensure that drugs and medicines are affordable to consumers—best serves the longstanding intent of the Legislature to tax food and drugs in a favorable manner. Because, as a result of the Comptroller's interpretation of the provision, a drug company's franchise tax will almost always be based on earned surplus, Upjohn contends that the interpretation frustrates the purpose of affordability of pharmaceuticals because it will result in

12

higher prices and, in effect, it altogether eliminates the exclusion. We have previously recognized that, taken as a whole, the 1991 amendments to the franchise tax statutes were intended to redistribute the franchise tax burden from capital-intensive industries that have lower earnings and net worth to more profitable industries. Having concluded that the Legislature—by its language and in the context of the components of the franchise tax—has spoken with a clear and specific voice, we must resolve the tension between a longstanding legislative policy and the Legislature's intent at the time of the enactment of specific legislation in favor of the latter.

Finally, as a general rule, we may give substantial weight to an administrative agency's contemporaneous interpretation of an ambiguous statute, so long as the interpretation is reasonable, especially when the agency has special expertise in the area. *See, e.g., Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994); *Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 62 (Tex. App.—Austin 1995, writ denied). Application of these rules leads us to conclude that the Comptroller's interpretation of the present statute is correct.

### *Equal and Uniform Taxation*

As its next issue on appeal, Upjohn urges that the Comptroller's interpretation of section 171.104 violates the Due Process and Equal Protection Clauses of the United States Constitution and the Equal and Uniform Clauses of the Texas Constitution. Upjohn contends that the Comptroller's distinction between the taxable capital component and the earned surplus component for purposes of computing the apportionment factor impermissibly discriminates between

otherwise similarly situated taxpayers. Because this "preferential treatment" bears no rational relationship to any legitimate state interest, Upjohn argues that it is unconstitutional.

The United States Constitution requires equal protection of the law. *See* U.S. Const. amend. XIV, § 1. The requirements for equal protection under the United States Constitution and equal and uniform taxation under the Texas Constitution are substantially the same. *See Railroad Comm'n v. Channel Indus. Gas Co.*, 775 S.W.2d 503, 507 (Tex. App.—Austin 1989, writ denied). The Supreme Court has repeatedly held that states are entitled to great latitude in devising formulas to apportion their tax bases. *See Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 274 (1978). The parties agree that states generally have broad powers to impose and collect taxes, but that they may not make classifications among taxpayers that are arbitrary, unreasonable, or capricious. *See Hurt v. Cooper*, 110 S.W.2d 896, 901 (Tex. 1937). Equal protection requires that laws classifying taxpayers have a conceivable rational basis related to a legitimate government purpose. *Id.*

Section 171.104 has the following effect: it (1) classifies drug manufacturers separately from other manufacturers; (2) subclassifies drug manufacturers into those who make interstate sales and those who make intrastate sales; (3) allows all drug manufacturers who make interstate sales to deduct interstate receipts from their taxable capital apportionment factor; and (4) allows no drug manufacturer to deduct interstate receipts from their earned surplus factor. Tex. Tax Code Ann. § 171.104. Because franchise tax is paid on the higher of earned surplus (profits) or taxable capital (net assets), section 171.104 disproportionately favors drug manufacturers whose franchise taxes are based upon taxable capital. More profitable or less capital-intensive taxpayers

14

would generally base tax on earned surplus while less profitable or more capital-intensive taxpayers would base tax on taxable capital.

The mandate that all taxes be equal and uniform requires only that all persons falling within the same class be taxed alike. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 240 (Tex. App.—Austin 1996, writ denied) (citing *Hurt*, 110 S.W.2d at 901). We will uphold a tax classification unless it has no rational basis. *See Caterpillar, Inc.*, 932 S.W.2d at 240. In reviewing taxation laws, we indulge a strong presumption of constitutional validity. *See id.* (citing *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989)).

Upjohn has not carried its burden in this case to rebut the presumption of constitutionality by showing that the statute is not rationally related to a legitimate state interest, that the statute's tax classification has no rational basis, or that the tax is not applied equally and uniformly within the class to be taxed. We are satisfied that section 171.104 is not constitutionally infirm. An otherwise valid and neutral classification is not suspect because it has a disproportionate result on certain taxpayers. *See Rylander v. 3 Beall Brothers 3, Inc.*, 2 S.W.3d 562, 569 (Tex. App.—Austin 1999, pet. denied)

**"Family Supplies for Home and Farm Use"**

As one of its grounds for summary judgment, Upjohn complains that the drugs and medicines sold by Upjohn are excluded from taxation by article VIII of the Texas Constitution.[9] Section 19 of article VIII prohibits taxation of "family supplies for home and farm use" unless

_____

[9]    Tex. Const. art. VIII, § 19.

15

otherwise directed by a two-thirds vote of the Legislature. Because the drugs and medicines sold by Upjohn are "specifically marketed by Upjohn for ultimate consumption and use, upon sale, by families in their homes and on their farms," Upjohn contends that any imposition of a tax on these items must have received a two-thirds legislative vote. In Upjohn's view, the exclusion of drug and medicine receipts from both taxable capital and earned surplus calculations best captures the intent of this prohibition that has been in the Texas Constitution since 1879. We find this argument unconvincing.

We have not been cited to any cases and we are unable to find any that interpret the phrase "family supplies for home and farm use." The phrase is not further defined in the constitution. It has, however, been interpreted by an opinion of the Attorney General. *See* Op. Tex. Att'y Gen. No. WW-1025 (1961). In response to an inquiry in 1961 by the Chairman of the House of Representatives Committee of Revenue & Taxation as to "what articles of commerce are included in the phrase," the attorney general wrote:

> [F]amily supplies for home and farm use means commodities in the home and on the farm for day-to-day use after they are in the hands of the consumer and not before. These commodities are not exempt from taxation before their acquisition by the farmer or dwellers of a home. Commodities while in the hands of the merchant or distributor would not be family supplies as contemplated by Sec. 19. These commodities would be subject to taxation until after they are acquired by farmers or home dwellers . . . .

*Id.* at 1-2. The opinion was based upon a review of the various resolutions proposed for amending the provision at the time of its adoption. "The various resolutions and substitutes showed the intention of the Legislature at that time to exempt produce of the soil and supplies or provisions necessary for the family consumption." *Id*. at 2. One proposed alternative read "provisions and

16

forage on hand for home consumption." *Id*. at 3. The attorney general concluded that at the time article VIII, section 19 was adopted, "it was the intention of the people to exempt from all taxation commodities, supplies, or provisions on hand for home consumption," and "such supplies are exempt from all taxation when they are in the hands or possession of farmers or home dwellers and not before." *Id*. at 3-4.[10] For an agency charged with enforcement of a statute, we give serious consideration to the agency's construction of the statute, so long as the interpretation is reasonable and does not contradict the statute's plain language. *See Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944).

As we have concluded that the provision in question is to be construed in favor of the taxing authority, we may not strain the words of the Texas Constitution to the breaking point by reading them to include the profits derived from the sales of pharmaceuticals by international manufacturing companies. We conclude that the Comptroller's interpretation of the phrase, as informed by prior attorney general opinions, is reasonable. Consequently, we conclude that the receipts in question are not exempt as "family supplies for home and farm use."

*Penalties and Interest*

Upjohn next asserts that the Comptroller improperly assessed interest that should have been abated pursuant to section 111.103 because it exercised reasonable diligence.[11] Upjohn contends that section 111.103 establishes a single standard for abatement of penalties and interest and

---

[10] *See also* Op. Tex. Att'y Gen. No. H-898 (1976).

[11] Tex. Tax Code Ann. § 111.103 (West 1992).

that the Comptroller conceded Upjohn's reasonable diligence by waiving the tax penalty on the unpaid franchise tax. Having found that Upjohn acted with reasonable diligence for the purpose of waiving penalties, Upjohn urges that the Comptroller is required to waive interest as well.

Section 111.103 provides that the Comptroller "may settle a claim for a tax penalty *or interest* on a tax imposed . . . if the taxpayer exercised reasonable diligence to comply with the provisions of this title." Tex. Tax Code Ann. § 111.103 (emphasis added). Because the statute, by its terms, provides for a waiver of the tax penalty or interest, we reject the contention that the statute provides for a single standard. It necessarily follows from the use of the disjunctive, and we hold, that the statute gives the Comptroller discretionary authority to waive one or both amounts. From the record before us, we cannot conclude that the Comptroller acted outside her discretionary authority.[12]

***Exclusion of Expert Witness Affidavit***

Upjohn argues that the affidavit of Thomas L. Evans, an expert on taxation in Texas, should not have been excluded from evidence. Based upon his experience in the Texas legislative process, Evans averred that the Texas Franchise Tax Act was intended to reflect Texas's favorable policy towards food and drugs and medicine and that therefore these items were excluded from the numerator of the gross receipts apportionment formula whether the franchise tax was based on taxable capital or earned surplus. These issues generally concern the construction or interpretation of the tax statutes in question. Matters of statutory construction are questions of law for the court to decide. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655-56 (Tex. 1989); *City of Austin*

---

[12] *See* 34 Tex. Admin. Code § 3.5 (2000) (Tex. Comp. Pub. Accts., Tax Administration: General Rules).

*v. Austin Prof'l Fire Fighters Ass'n*, 935 S.W.2d 179, 180 (Tex. App.—Austin 1996, no writ). An expert witness may not testify regarding an opinion on a pure question of law. *See Holden v. Weidenfeller*, 929 S.W.2d 124, 133 (Tex. App.—San Antonio 1996, writ denied); *Schauer v. Memorial Care Sys.*, 856 S.W.2d 437, 451 (Tex. App.—Houston [1st Dist.] 1993, no writ).

Nevertheless, an expert may offer an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and based on proper legal concepts. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987). Assuming without deciding that the issues on which Upjohn sought to present Professor Evans's testimony included mixed questions of law and fact, the record reflects that the Evans affidavit was tendered in support of Upjohn's summary judgment motion. The State objected on numerous grounds, including that the affidavit contained only legal conclusions. Although Upjohn complains on appeal that the affidavit was improperly excluded from evidence, we are unable to find support in the record that the Comptroller's objections were ruled upon. We therefore treat the affidavit as properly before us.[13] We nevertheless conclude that in the absence of the specific expression of legislative intent with respect to the disputed provisions, we may not allow public policy arguments, however compelling, to override the Legislature's intent. *See Fleming Foods v. Rylander,* 6 S.W.3d 278, 283-84 (Tex. 1999); *Rylander v. B&A Mktg. Co.*, 997 S.W.2d 326, 330-31 (Tex. App.—Austin 1999, no pet.).

***Retroactive Application of Law***

---

[13] *See* Tex. R. App. P. 33.1(a)(2)(A).

As its final issue on appeal, Upjohn complains that the Comptroller's imposition of the earned surplus component of the franchise tax for the year 1992 violates the retroactivity provision of the Texas Constitution, article I, section 16, because it was imposed on receipts that were earned by Upjohn prior to enactment of the earned surplus statute. The earned surplus component of the Texas franchise tax provision was enacted in 1991 with an effective date of January 1, 1992. It applied to tax reports due on or after that date. Because the franchise tax is calculated on income earned in the prior year, Upjohn was required to use as its tax base income earned in calendar year 1991. Upjohn contends that the tax is impermissibly retroactive for the year 1992.

Article I, section 16 of the Texas Constitution provides: "No . . . retroactive law . . . shall be made." Tex. Const. art. I, § 16. Concluding that a statute is not retroactive merely because it draws upon antecedent facts for its operation, we have previously held that "[a]s long as a tax is levied only after its effective date and is levied at least in part for the privilege of doing business during the current year, then it is not a retroactive tax." *General Dynamics Corp.*, 919 S.W.2d at 866. Upjohn asks that we overrule *General Dynamics*. This we decline to do.

**CONCLUSION**

Having concluded that Upjohn may not exclude its Texas drug and medicine receipts from the numerator of its earned surplus gross receipts apportionment factor for purposes of calculating its franchise tax, we overrule its issues on appeal and affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed:  October 19, 2000

Publish