# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00644-CV

**Energy Education of Montana, Inc., Appellant**

**v.**

**Texas Comptroller of Public Accounts and the Attorney General of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-09-001249, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Energy Education of Montana, Inc. (EEM) brought this tax refund suit against the Comptroller of Public Accounts and the Attorney General of Texas (collectively, "the Comptroller") seeking to recover the use tax it paid, under protest, on an airplane it purchased in 2003. On cross-motions for summary judgment, the district court granted the Comptroller's motion and denied EEM's motion. On appeal, EEM argues that it is entitled to an exemption from the use tax under a proper interpretation of tax code section 151.328(a)(4). We will affirm the district court's judgment.

### Background

The facts are undisputed, having been established below in a stipulation of facts. EEM is a Montana corporation incorporated on June 20, 2003, solely for the purpose of purchasing a Hawker 800 XP corporate jet from Raytheon Aircraft Company for $7,239,722.50. EEM is a wholly-owned subsidiary of Energy Education, Inc. (EEI), a privately-held Texas corporation in the business of energy consulting with physical offices in Dallas and Wichita Falls, Texas. EEM

purchased the Hawker to transport EEI personnel on EEI business. On June 26, 2003, EEI's president, William Spears, boarded the Hawker in Little Rock, Arkansas, where the Hawker's interior was completed, and flew to Helena, Montana, where he took delivery of the aircraft for EEM and attended an EEI business meeting. The next day, Spears and his wife flew on board the Hawker to Santa Monica, California, where they and the aircraft stayed for a few days and then returned to EEM headquarters in Wichita Falls, Texas. Over the next three years—i.e., until it was sold in October 2006—the Hawker was based in Wichita Falls and the majority of its flights originated in Texas. Although EEM had originally intended to hangar the Hawker in Lawton, Oklahoma—approximately 50 miles north of Wichita Falls—it instead used hangar space at the Wichita Falls airport for the three years it owned the Hawker.

Two days before its purchase of the Hawker, EEM mailed to Raytheon a Comptroller form titled, "Texas Aircraft Exemption Certificate Out-of-State Registration and Use." This form stated that EEM was claiming "an exemption from Texas sales tax pursuant to Texas Tax Code section 151.328(a)(4) because the aircraft is purchased for registration and use outside Texas." It also stated that the Hawker would be registered and hangared in Helena, Montana and that "the aircraft is purchased for registration and use outside Texas before any use in Texas." Two sentences on the form authorizing the Comptroller to notify the purchaser's home state about the purchase were marked through with the explanation that "This paragraph is not applicable because Montana has no state sales tax."[1] Around that same time, EEM registered the Hawker with the Federal Aviation

---

[1] The marked-through sentences read as follows: "I understand that by signing this form, I am authorizing the Texas Comptroller of Public Accounts to furnish copies to officials of my home state. I understand that the purpose of providing this information to officials of my home state is to facilitate the enforcement of any taxes imposed on the purchase or use of the aircraft in my home state." Texas Comptroller of Public Accounts Form 01-907, *available at*

2

Administration and the State of Montana using the Montana address of its registered agent for service. EEM also paid annual registration fees to the state of Montana over the next three years.

Following a 2005 audit of EEM, the Comptroller assessed a use tax, including penalties and interest, on the Hawker in the amount of $890,601.19. EEM paid the assessed use tax, penalties, and interest under protest and, after exhausting its administrative remedies, filed the underlying tax refund suit. *See* Tex. Tax Code Ann. § 112.052 (West 2008) (authorizing taxpayer suit after payment under protest). In addition to and as part of its claim for a refund of use taxes paid, EEM's petition sought declaratory judgments regarding the application of the tax code's aircraft exemption to EEM's use of the Hawker in Texas. *See* Act of May 9, 1995, 74th Leg., R.S., ch. 147, § 1, 1995 Tex. Gen. Laws 994, 995 (amended 2007) (current version at Tex. Tax Code Ann. § 151.328(a)(4) (West Supp. 2012)) (cited hereinafter as "Former § 151.328(a)(4)").[2] This aircraft exemption specifically provided that an aircraft is exempt from sales and use taxes if the aircraft was "sold to a person for use and registration in another state or nation before any use in this state other than flight training in the aircraft and the transportation of the aircraft out of this state." *See* Former § 151.328(a)(4).[3] The parties filed competing motions for summary judgment on the issue of whether EEM was entitled to a use-tax exemption under former section 151.328(a)(4), with the

---

http://www.window.state.tx.us/taxinfo/taxforms/01-907.pdf. There is no indication in the record that EEM sent this form to the Comptroller.

[2] All references to tax code section 151.328(a)(4) and the "aircraft exemption" refer to the 1995 version of this statute unless otherwise indicated.

[3] The 2007 amendment to former section 151.328(a)(4) added "in this state" after the word "sold"—i.e., "sold *in this state* to a person for use and registration in another state or nation before any use in this state . . . ." *See* Act of May 27, 2007, 80th Leg., R.S., ch. 1266, § 9, 2007 Tex. Gen. Laws 4234, 4237 (current version at Tex. Tax Code Ann. § 151.328(a)(4) (West Supp. 2012)).

3

Comptroller specifically urging that it was entitled to summary judgment because section 151.328 creates a *sales-tax* exemption for aircraft sold in Texas to be used and kept in another state. The district court granted the Comptroller's motion for summary judgment and denied EEM's. It is from this judgment that EEM now appeals.

**Standard of review**

Summary judgment is proper if the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In our de novo review of a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004).

**Discussion**

In one issue on appeal, EEM argues that it and not the Comptroller was entitled to summary judgment under the plain language of former section 151.328(a)(4) because the summary-judgment evidence conclusively established that EEM purchased the Hawker in Montana, registered the Hawker in Montana, and then used the Hawker in Montana and California for six days before using it in Texas. In specific support of its argument, EEM argues that the plain text of former

4

section 151.328(a)(4) does not require that the aircraft be purchased in Texas and that, therefore, it creates an exemption for both the sales tax and the use tax.

Because EEM's sole issue on appeal involves the proper construction of former section 151.328(a)(4) and its application to the stipulated facts of this case, our decision here turns on the interplay of various provisions from tax code chapter 151:

**Sales tax:** Section 151.051(a) imposes a sales tax "on each sale of a taxable item in this state." "Taxable item" includes tangible personal property. *See* Tex. Tax Code Ann. § 151.010.

**Use tax:** Section 151.101 imposes a use tax "on the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use, or other consumption in this state." *Id.* § 151.101. The use tax complements the sales tax in that it is not applicable to a purchaser who has paid sales-tax to an in-state retailer, *see id.* § 151.303; 30 Tex. Admin. Code § 3.346(c), and it is designed to tax transactions not reached by the sales tax—i.e., it taxes the use or consumption in this state of property purchased outside the state. *See Combs v. Chapal Zenray, Inc.*, 357 S.W.3d 751, 756 (Tex. App.—Austin 2011, pet. denied) (citing *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied)). "[T]angible personal property that is shipped or brought into this state by a purchaser is presumed, in the absence of evidence to the contrary, to have been purchased from a retailer for storage, use, or consumption in this state." Tex. Tax Code Ann. § 151.105(a).

**Aircraft exemption:** Former section 151.328(a)(4) provides a tax exemption for aircraft "sold to a person for use and registration in another state or nation before any use in this state other than flight training in the aircraft and the transportation of the aircraft out of this state." *See* Former § 151.328(a)(4).

Statutory construction is a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in construing statutes is to give effect to the Legislature's intent and, ordinarily, the truest manifestation of what lawmakers intended is what they enacted. *See First Am. Title Inc. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). The language emerging from the legislative process "constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'"

5

*Combs v. Roark Amusement & Vending, L.P.*, __S.W.3d__, No. 11-0261, 2013 WL 855737, at *2 (Tex. Mar. 8, 2013) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We give such unambiguous statutes their plain meaning without resort to rules of construction or extrinsic aids. *Id.* (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010) (branding such reliance "improper," because "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language" (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008))). In so doing, we use any definitions prescribed by the Legislature and consider any technical or particular meaning that the words have acquired. *See* Tex. Gov't Code Ann. § 311.011(b) (West 2005). Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the literal language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the Legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied). On the other hand, "'[i]f a statute is vague or ambiguous, we defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute.'" *Id.* (quoting *Texas Dep't of Ins. v. American Nat'l Ins. Co.*,__S.W.3d__, 2012 WL 1759457, at *8 (Tex. 2012)).

We agree with the Comptroller that under a plain-meaning review of the applicable tax code, EEM is not entitled to an exemption from the use tax under former section 151.328(a)(4).

A use tax is imposed on the *use* of a taxable item *in this state*. *See* Tex. Tax Code Ann. § 151.101(a) (imposing tax "on the . . . *use* . . . *in this state* of a taxable item purchased from a retailer for . . . *use* . . . *in this state*") (emphases added). In contrast, the aircraft exemption by its own terms applies only to aircraft sold "*for use . . . in another state*." *See* Former Tex. Tax Code Ann. § 151.328(a)(4) (emphases added). This provision does not create an exemption to the use tax because the use tax and the exemption are mutually exclusive: an aircraft that is used in Texas, subjecting it to the use tax, could not have been sold for use in another state; likewise, an aircraft that was sold for use in and used in another state, would not be subject to the use tax so no exemption from the use tax is needed. In sum, it would be unreasonable to construe former section 151.328(a)(4) to create a tax exemption for a tax that it does not impose.

Relatedly, and perhaps more important here, we also agree with the Comptroller that EEM is not entitled to an exemption under former section 151.328(a)(4) because that exemption applies only to aircraft sold *in Texas*. Although the former version of the aircraft exemption does not include the phrase "in this state," the only reasonable construction of former section 151.328(a)(4) is to limit its application to aircraft sold in Texas. First, section 151.328(f) explicitly limits former section 151.328(a)(4)'s application to aircraft purchased in Texas: "To qualify for the exemption provided under Subsection (a)(4), the person purchasing the aircraft *in this state* must sign at the time of purchase an exemption certification . . . ." Former Tex. Tax Code Ann. § 151.328(f) (emphasis added). Second, if the aircraft exemption could apply to aircraft sold outside Texas, the Legislature would not have needed to include the transportation exception—allowing aircraft to be flown "out of this state" without losing exemption—within the terms of the exemption. Finally, based on our earlier conclusion that former section 151.328(a)(4) does not create an

exemption to the use tax, the aircraft exemption can only apply to sales tax, which can only be assessed on items *sold in Texas*. *See* Tex. Tax Code Ann. § 151.051(a) (imposing a sales tax "on each sale of a taxable item *in this state*").

EEM argues that Comptroller rule 3.927(c)(9) supports its construction of the aircraft exemption because that rule refers to both "sales and use tax":

> Texas sales or use tax is not due on aircraft sold to a person for use and registration in another state or nation before any use in Texas. Flight training in the aircraft in Texas and flying the aircraft out of state does not constitute a use of the aircraft in Texas.

34 Tex. Admin. Code § 3.297(c)(9) (2005) (Comptroller of Pub. Accounts, Carriers). Relatedly, EEM argues that the Comptroller's promulgation of rule 3.297(c)(9) precludes the Comptroller, through principles of quasi-estoppel, from arguing in this case that the aircraft had to be sold in Texas to qualify for the exemption because that rule does not require that the aircraft be sold in Texas. We disagree with both arguments. In addition to the fact that the State is not subject to the equitable defenses of limitations, laches, and estoppel, *State v. Durham*, 860 S.W.2d 63, 67 (Tex. 1993), we would note that Comptroller rule 3.297(c)(9) is simply a restatement of former section 151.328(a)(4). The rule's reference to "sales and use tax" is no different than former section 151.328(a)(4)'s reference to "the taxes imposed by this chapter." *See* Tex. Tax Code Ann. § 151.328(a) ("Aircraft are exempted from the taxes imposed by this chapter . . . ."). Moreover, it is not incorrect to say that use tax is not due on an item to be used and registered in another state. As such, the rule is not inconsistent with the notion that the aircraft exemption requires purchase in Texas.

8

We also reject EEM's argument that the Comptroller's March 2006 tax publication serves as a judicial admission that an aircraft does not have to be sold in Texas to qualify for the aircraft exemption. First, for the same reasons set forth above regarding rule 3.297, the publication referenced here does not conflict with the plain language of former section 151.328(a)(4). Further, a judicial admission involves a formal waiver of proof as to *facts* made *during the course* of a judicial proceeding. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (noting that judicial admission "occurs when an assertion of fact is conclusively established in live pleadings"); *In re Graham*, 251 S.W.3d 844, 849 (Tex. App.—Austin 2008, no pet.) ("A judicial admission results when a party makes a statement of fact which disproves his right of recovery or defense."). Comptroller publications contain general information for the public regarding particular areas over which the Comptroller has administrative control, such as state taxes. The publication referenced here was not a pleading in this case, was not made in the course of a judicial proceeding, and does not contain assertions of fact. As such, the Comptroller publication is not a judicial admission.

EEM argues that a Comptroller letter and memo, which EEM refers to as the Comptroller's "transitory entity rules," support its argument that an aircraft can be purchased outside Texas and still qualify for the aircraft exemption. But the letter and memo on which EEM relies are merely Comptroller responses to taxpayer requests regarding whether a taxable transaction occurred under specific facts; they did not involve requests for an exemption from a tax. Further, the transactions involved were non-taxable events because the asset was acquired by the ultimate consumer through the liquidation of a transitory subsidiary entity, not via *purchase* from a retailer.

9

Thus, because the tax code only imposes a use tax on the use of a taxable item that was *purchased* from a retailer, *see* Tex. Tax Code Ann. § 151.101(a), these "rules" do not inform our decision here.

Finally, EEM argues that the Comptroller violated administrative rule-making procedures when it effectively amended former section 151.328(a)(4) and rule 3.297(c)(9) by taking the position that the aircraft exemption applies only if the aircraft is purchased in Texas. *See* Tex. Gov't Code Ann. §§ 2001.033 (setting forth agency rule-making procedures), .035 (invalidating rules adopted in violation of rule-making procedures). EEM, however, did not seek relief from this alleged violation in its petition to the district court and, thus, has waived this argument. Regardless, however, there exists no rule or policy to deem void that would change the outcome of our holding here that the statutory aircraft exemption in former section 151.328 requires purchase in Texas and does not create a use-tax exemption.[4]

In sum, we hold that former section 151.328(a)(4) applies only to aircraft purchases made in Texas and, relatedly, does not create a use-tax exemption. Therefore, because the summary-judgment evidence conclusively established that EEM purchased the Hawker outside Texas and was assessed a use tax based on its use of the Hawker in Texas, EEM is not entitled to the aircraft exemption under former section 151.328(a)(4). Accordingly, we affirm the district court's judgment.[5]

---

[4] EEM complains about the Comptroller's use of legislative history as summary-judgment evidence, but we need not address that complaint given that our holding does not rely on extrinsic aids. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010) (noting that reliance on extrinsic aids is improper for unambiguous statute).

[5] In its briefs to this Court, EEM makes multiple references to, and lengthy argument about, its objections to certain of its stipulations. It appears that EEM's specific objections are to the relevance of those stipulations, but we need not address this matter given that our holding here does not rely on any of stipulations to which EEM "objects."

## Conclusion

Having overruled EEM's sole issue on appeal, we affirm the district court's judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   April 25, 2013