# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00646-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellant**

**v.**

**Chapal Zenray, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-02-004506, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

## O P I N I O N

Appellee Chapal Zenray, Inc. ("Chapal") sued appellants Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the State"), seeking a refund of use taxes assessed on certain materials that were purchased from out-of-state sellers, were temporarily affixed to jewelry while in Texas, and were subsequently used by Chapal's out-of-state customers (which were themselves retail outlets) to facilitate sale of the jewelry to the ultimate consumers. The sole issue in this case is whether Chapal's use of the materials while in Texas constitutes a taxable use. *See* Tex. Tax Code Ann. §§ 151.011, .101 (West 2008).[1] On cross-motions for summary judgment, the trial court granted

---

[1] In this opinion, we cite to the current versions of the statutes and rules for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

Chapal's motion and denied the State's motion, concluding that the materials were not "used" in Texas within the meaning of the tax code. On appeal, the State argues that, as a matter of law, the materials were not sufficiently attached to the jewelry to qualify for any exclusion or exemption from taxability. *See id.* We will reverse the trial court's order granting summary judgment in Chapal's favor and render judgment for the State.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a use-tax refund case in which Chapal seeks a refund of taxes paid following an audit for the period of January 1, 1994 through December 31, 1997. The tax was assessed on display cards, jewelry boxes, labels, elastic strings, twist ties, and foam ring pads (collectively "the materials") purchased from vendors outside the state and shipped to Chapal in Texas. Once the materials were in Texas, Chapal affixed them to jewelry that was also purchased predominantly outside the state.[2] The method of attachment varied and included punching earring posts through display cards and then fastening the earring backs to the posts, using twist ties or elastic strings to affix earrings, bracelets, necklaces, and rings to display cards, and putting rings into slots in the foam pads to help prevent the rings from falling out of the jewelry boxes. Chapal also affixed self-adhesive labels to the display cards. The labels included information such as bar codes, the prices at which the retailers would sell the items to the ultimate consumers, and tax amounts. Chapal's customers specified where to purchase the labels, what information to include on the labels,

_____

[2] Chapal purchased 94% of the materials and jewelry from vendors outside Texas and shipped 86% of the materials and jewelry to retailers outside the state. The only transactions at issue in this case involve the products purchased from vendors outside the state and transported outside the state for use by Chapal's customers.

and how the jewelry would be attached to the materials. Once combined, the materials and jewelry were shipped by common carrier to Chapal's customers in other states for use and display in their retail stores.

Chapal paid the assessed tax, penalties, and interest under protest and, after exhausting administrative appeals, filed the underlying tax refund suit. *See id.* § 112.052 (taxpayer suit after payment under protest). Chapal contends that, under section 151.011(f)(2) of the tax code, attachment of the materials to the jewelry prior to transporting the combined product to out-of-state retailers is a nontaxable use of the materials. That section provides:

> (f) Neither "use" nor "storage" includes the exercise of a right or power over or the keeping or retaining of tangible personal property for the purpose of:
>
> . . . .
>
> > (2)    processing, fabricating, or manufacturing the property into other property or *attaching the property to* or incorporating the property into *other property to be transported outside the state for use solely outside the state*.

*Id.* § 151.011(f)(2) (emphasis added). Based on this provision, Chapal moved for partial summary judgment, arguing that the undisputed facts and plain language of the statute establish as a matter of law that the materials were neither used nor stored in Texas because Chapal (1) purchased tangible personal property from non-Texas vendors, (2) attached that property to other property in Texas, and

3

(3) subsequently shipped the combined products out of Texas for use solely outside the state. Chapal asserted no other exclusions or exemptions from taxability.[3]

In its cross-motion for summary judgment and in response to Chapal's motion for summary judgment, the State argued that Chapal's definition of "attaching" is too broad because it would exclude from taxation disposable property temporarily attached to other tangible personal property. According to the State, Chapel's definition of the term "attaching" is inconsistent with the other terms used in section 151.011(f)(2)—processing, fabricating, manufacturing, and incorporating—as well as other provisions of the tax code making packaging nonexempt when used by a reseller of tangible personal property. The State posited that the term "attaching" means instead "the joining of two items whereby the end result is a product distinct from its individual parts, as is the case with a pen and ink cartridge or a car and tires . . . a union of materials to create a product, rather than a mere temporary affiliation as Chapal suggests." Under the State's interpretation of section 151.011(f)(2), a product "attaches" to another product only if the combination of the products "create[s] a new, uniquely identifiable product . . . [in which] the components utilized are no longer considered separable from the whole." The State also argued that (1) the materials at issue here

---

[3] On appeal, Chapal argues in the alternative that it is entitled to an exemption applicable to "manufacturers." *See* Tex. Tax Code Ann. § 151.318 (West 2008); 34 Tex. Admin. Code §§ 3.300 (2011) (Comptroller of Public Accounts, Manufacturing; Custom Manufacturing; Fabricating; Processing), .314(a)(4), (b), (e) (2011) (Comptroller of Public Accounts, Wrapping, Packing, Packaging Supplies, Containers, Labels, Tags, Export Packers, and Stevedoring Materials and Supplies). However, Chapal did not rely on this exemption in its motion for rehearing in the administrative proceeding. *See* Tex. Tax Code Ann. § 112.152(a) (West 2008) ("The grounds of error contained in the motion for rehearing are the only issues that may be raised in a suit under this subchapter."). Moreover, in the proceedings before the trial court, Chapal did not plead applicability of the manufacturing exemption in its petition, did not move for summary judgment on that ground, and expressly disclaimed reliance on the exemption. For these reasons, the argument is waived.

4

constitute "packaging," (2) packaging does not "attach" to the consumer end-product, (3) the packaging at issue in this case is not exempt from taxation under the tax code, and (4) any definition of "attaching," as used in section 151.011(f), that would allow packaging to qualify as being attached is inconsistent with provisions in the tax code and the administrative code concerning taxability of packaging. *See id.* § 151.302 (declining to extend the "sale for resale" exemption to "[i]nternal or external wrapping, packing, and packaging supplies used by a person in wrapping, packing, or packaging tangible personal property . . . ."); 34 Tex. Admin. Code § 3.314 (2011) (Comptroller of Public Accounts, Wrapping, Packing, Packaging Supplies, Containers, Labels, Tags, Export Packers, and Stevedoring Materials and Supplies).[4]

The trial court granted Chapal's motion for partial summary judgment and denied the State's motion, concluding that the materials were not used by Chapal within the meaning of the tax code (i.e., that they were "attached" to the jewelry and therefore not subject to use tax) because they served the *retailer's* display purposes and might, at least in some instances, also serve the ultimate consumers as permanent containers for the jewelry after detachment. After the parties agreed on the only remaining issue—the amount of the tax refund—the trial court rendered a final judgment in Chapal's favor, requiring the State to issue one or more refund warrants in the amount of $88,858.98 along with statutory interest as provided in section 112.060 of the tax code.

---

[4] We note that there are a number of exemptions in which certain packaging materials would be exempt on their own or in the hands of the proper taxpayer, but none of those exemptions is properly claimed in this case. *See, e.g., id.* §§ 151.318 (property used in manufacturing); .322 (containers).

5

## DISCUSSION

### *Standard of Review and Statutory Construction Principles*

Summary judgment is proper if the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). In our de novo review of a summary judgment, we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004).

The basic facts in this case are not in dispute, and the only issue for our review is the proper construction of section 151.011(f)(2) and its application to the undisputed facts. Statutory construction is a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek first and foremost in the statutory text. *Id.* In so doing, we use any definitions prescribed by the legislature and consider any technical or particular meaning that the words have acquired. Tex. Gov't Code Ann. § 311.011(b) (West 2005). Absent legislative definition, we rely on the plain meaning of the text unless a different meaning is apparent from the context or application of the literal language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005)

6

("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). We look to the entire act in determining the legislature's intent with respect to specific provisions. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011); *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied).

Although we must give "serious consideration" to the construction of a statute by the administrative agency charged with its enforcement, our deference to an agency's interpretation is not unfettered. *Texas Citizens*, 336 S.W.3d at 625. The deference standard applies only if the statute is ambiguous, and we must consider only an agency's "'formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions [in a court brief].'" *Id.* (quoting *Feiss v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006)). "[W]e will generally uphold an agency's interpretation . . . so long as the construction is reasonable and does not contradict the plain language of the statute." *Id.* (quoting *First Am. Title*, 258 S.W.3d at 632 (internal quotation marks omitted)).[5] "We need not consider whether the [agency's] construction is the only—or the best—interpretation in order to warrant our deference." *Id.* at 628.

The foregoing principles of statutory construction, including deference to an agency's interpretation, are well established and are considered by the supreme court to be the "dominant rules of [statutory] construction." *First Am. Title*, 258 S.W.3d at 632 (citation omitted). In tax cases,

---

[5] The degree of deference required has been variously stated in discretionary and mandatory terms. *See Texas Citizens*, 336 S.W.3d at 624, 625, 629 (stating courts "*should grant . . . some* deference," courts "*will generally uphold* an agency's interpretation," and courts "*must uphold* the enforcing agency's construction" if statute is ambiguous (emphases added)).

7

additional rules of construction may apply, but only when doubt about a statute's application remains after the dominant rules of construction have been applied. *Id.* For example, it is often stated that when a question of exemption from taxation is involved, the statute must be construed liberally in favor of the taxing authority and strictly against the taxpayer. *Texas Unemployment Comp. Comm'n v. Bass*, 151 S.W.2d 567, 570 (Tex. 1941); *Upjohn Co.*, 38 S.W.3d at 606. If, on the other hand, the issue is whether the taxpayer comes within the statutory provision imposing the tax—that is, whether the person, property, or activity is taxable in the first instance—the statute must be construed strictly against the taxing authority and liberally in favor of the taxpayer. *See Bass*, 151 S.W.2d at 570*; see also First Am. Title*, 258 S.W.3d at 632.; *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974). These rules come into play, however, only if the statute is held to be ambiguous and the State's interpretation is determined to be unreasonable. *See First Am. Title*, 258 S.W.3d at 632.

### *Taxability of the Materials*

Section 151.101(a) of the tax code imposes a use tax "on the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use or other consumption in this state." Tex. Tax Code Ann. § 151.101(a). The use tax complements the state sales tax and is designed to tax transactions not reached by the sales tax. *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied). The use tax thus applies to use or consumption in this state of property purchased outside the state. *Id.* The purpose of the use tax is "to more evenly distribute the tax burden among all consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property in this State." *Bullock v. Lone Star Gas Co.*, 567 S.W.2d 493, 497 (Tex. 1978). The use tax serves to prevent "avoidance of a state's

sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to collect and remit sales tax." *Foley Bros.*, 802 S.W.2d at 838. In accordance with the complementary nature of the use and sales taxes, use tax is not applicable to a purchaser who has paid sales tax to a Texas retailer, 34 Tex. Admin. Code § 3.346(c)(2), and any exemption applicable to the sales tax applies to the use tax. *Id.* at § 3.346(c)(3).

Under the tax code, "tangible personal property that is shipped or brought into this state by a purchaser is presumed, in the absence of evidence to the contrary, to have been purchased from a retailer for storage, use, or consumption in this state." Tex. Tax Code Ann. § 151.105(a). "Use" is defined as follows:

> (a) Except as provided by subsection (c) of this section, "use" means the exercise of a right or power incidental to the ownership of tangible personal property, including tangible personal property other than printed material that has been processed, fabricated, or manufactured into other property or attached to or incorporated into other property transported into this state, and except as provided by Section 151.056(b) of this code, includes the incorporation of tangible personal property into real estate or into improvements of real estate whether or not the real estate is subsequently sold.

> . . . .

> (c) "Use" does not include the sale of tangible personal property or a taxable service in the regular course of business, the transfer of a taxable service as an integral part of the transfer of tangible personal property in the regular course of business, or the transfer of tangible personal property as an integral part of the transfer of a taxable service in the regular course of business.

> . . . .

> (f) Neither "use" nor "storage" includes the exercise of a right or power over or the keeping or retaining of tangible personal property for the purpose of:

9

(1)     transporting the property outside the state for use solely outside the state; or

(2)     processing, fabricating, or manufacturing the property into other property or attaching the property to or incorporating the property into other property to be transported outside the state for use solely outside the state.

*Id.* § 151.011.

It is undisputed that the transactions at issue in this case originated outside the state of Texas and that the jewelry to which the materials were affixed was destined for use solely outside the state. The central issue in this case is whether Chapal's actions in affixing the materials to the jewelry before transporting the items outside the state was the type of nontaxable use contemplated by section 151.011(f)(2), a question that turns on the proper construction of the term "attaching" as used in that provision.

Neither "attach" nor "attaching" is defined by statute or by administrative rule, but Chapal contends that the plain and unambiguous meaning of the word "attach" is to affix—even temporarily—one item to another if the combined property has a functional, aesthetic, or useful purpose in the hands of the direct purchaser. To that end, the summary judgment evidence demonstrates that attaching the materials to the jewelry is an integral part of the product Chapal sells to its immediate customers and that the items are used by those customers—retailers—in the combined form to facilitate sale of the jewelry to the ultimate consumers. Thus, the combined product has functionality and usefulness to Chapal's direct customers. The uncontroverted summary judgment evidence further establishes that the materials are not treated as disposable in the hands

10

of the direct purchasers, i.e., Chapal's immediate customers. The materials must, however, be detached by the ultimate consumer in order for the jewelry to be used as intended.

### (a) Permanency of Attachment

The State contends that the degree of attachment required under section 151.011(f)(2) must be relatively permanent and must have a functional, aesthetic, or useful purpose in the hands of the ultimate consumer. The construction urged by the State is that the combined product must be a new product that is distinguishable from its components but derives its essential functionality from the process of attachment, like the joining of an ax head to an ax handle. In the administrative proceeding below, which is the Comptroller's only "formal" interpretation on this point, the example provided was a refrigeration unit for a trailer. *See* Comptroller of Public Accounts, Hearing No. 38,620 (August 19, 2002) (STAR System No. 200211668H); *see also Texas Citizens*, 336 S.W.3d at 625 (giving deference to agency interpretation in final order adopted after adjudication). The State asserts that the materials at issue in this case are more in the nature of "packaging" that is disposable following transportation outside the state and which must be removed before the jewelry can be used for its intended purpose; therefore, the State argues, the materials are not "attached" to the jewelry within the meaning of section 151.011(f)(2) and are instead used in Texas to facilitate transportation outside the state. The State contends that Chapal's interpretation ignores the context in which the term "attaching" is used and the overall structure of the tax code, which requires taxation of packaging materials when used to secure and transport products purchased for resale.

In support of its position, the State relies principally on (1) the language in section 151.011(f)(2), which includes other terms it says connote a relatively permanent joining of components—manufacturing, processing, fabricating, and incorporating, (2) section 151.302 of the tax code, which makes packaging used by resellers nonexempt, and (3) our opinion in *Houston Wire & Cable Co.*, No. 03-07-00006-CV, 2008 WL 678540, at *4 (Tex. App.—Austin, March 12, 2008, pet. denied) (mem. op.), in which we held that customized reels attached to cable and sold to wholesalers and distributers were subject to sales tax as "packaging" because they were disposable and the cable had to be removed from the reels in order for the end user to utilize the product as intended. *See id.*; *see also* Tex. Tax Code Ann. §§ 151.006 (defining "sale for resale"), .302 (providing exemption for sale for resale of taxable items, except "wrapping," "packing," and "packaging supplies" used by reseller).

To properly construe an undefined statutory term, we start first with the plain meaning of the words in the statute. The ordinary meaning of the word "attach" is "to annex, bind or fasten," *Black's Law Dictionary* 879 (9th ed. 2009), or to "make fast or join (as by string or glue): BIND, FASTEN, TIE <~price tags on each article>." *Webster's Third New Int'l Dictionary* 140 (2002). If we were to construe "attach" in isolation, these definitions could support Chapal's interpretation of the statute. The materials at issue are obviously "annexed," "bound," or "fastened" in one way or another to the jewelry, and the dictionary's examples include strings and price tags, like some of the materials at issue in this case. However, looking to the ordinary meaning of the words does not answer the critical questions in this case regarding (1) whether the legislature intended the degree of annexation, binding, or fastening to be something temporary or something relatively permanent,

12

and (2) from whose perspective that assessment is made—the direct purchaser or the ultimate consumer. Moreover, we cannot view the words in a statute in isolation but instead must consider the context in which they are used.

Pertinent to this issue, section 151.011(f)(2) uses other words whose meaning must inform our analysis—specifically "manufacturing," "processing," "fabricating," and "incorporating." Considering the context in which the term "attaching" is used, we agree with the State that it should not be construed so broadly as to render the other terms superfluous, but we also agree with Chapal that we must give effect to the disjunctive structure used in the statute and recognize that the term may have a meaning not fully encompassed by the other terms.

The words "incorporate" and "incorporating" are not defined by statute, but in common parlance they are understood to mean "to unite with or introduce into something already existent usu[ally] so as to form an indistinguishable whole that cannot be restored to the previously separate elements without damage" and to "blend, combine, or mingle thoroughly to form a homogeneous product." *Webster's Third New Int'l Dictionary* 1145 (2002). The Comptroller has defined the words "manufacturing," "processing," and "fabricating" by rule.[6] 34 Tex. Admin Code § 3.300(5), (9), (10). By definition, "manufacturing" includes "processing" and "fabricating," *id.*

___

[6] "Fabrication" means "[t]o make, build, create, produce, or assemble components of tangible personal property, or to make tangible personal property work in a new or different manner." 34 Tex. Admin. Code § 3.300(5). "Processing" includes "[t]he physical application of the materials and labor necessary to modify or to change the characteristics of tangible personal property." *Id.* at (10). "Manufacturing" includes "each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property. . . . Completion of production means the tangible personal property has all the physical properties including packaging, if any, that it has when transferred by the manufacturer to another." *Id*. at (9).

13

§ 3.300(8), (9)(B), and common to each of these definitions is a joining of components into a finished product. It is in the context of these terms that the word "attaching" is used in the statute. When all of the words in section 151.011(f)(2) are construed together, it is not unreasonable to believe the legislature intended to exclude from taxation only property that, after being attached to other property, serves as a component of a finished product—an integration of components that provides a sustained functionality, aesthetic appeal, or usefulness that is greater than that which the components possess individually. *Cf. Southwestern Bell Yellow Pages v. Combs*, No. 03-07-00638-CV, 2009 WL 211633 (Tex. App.—Austin Jan. 30 2009, pet denied) (mem. op.) (construing 2003 amendment to section 151.011(a), which added language nearly identical to language in section 151.011(f)(2), as excluding from taxation only printing materials that are components of finished product, not cost of printing services provided out-of-state for products distributed in Texas).

### *(b) From Whose Perspective: The Immediate Customer or the Ultimate Consumer?*

The second crucial dispositive issue here is what constitutes the "finished product." Under the particular circumstances of this case, we conclude that the statute is ambiguous because there is more than one reasonable interpretation. We agree with Chapal that, at a minimum, the materials have usefulness and functionality to the direct purchaser of the products when affixed to the jewelry and are, in that sense, a component of the product it sells. Moreover, at the time ownership of the property is transferred to Chapal's direct customers, the property is in the form in which it will be sold to the ultimate consumers. If taxability were determined based solely on the transaction between Chapal and its immediate customers—the retail outlets—it would be reasonable

14

to conclude that the materials are not disposable but are instead used by the out-of-state retailers, in both a practical and commercial sense, throughout their possession and ownership of the jewelry. In those circumstances, a reasonable construction of the terms "attach" or "attaching" in section 151.011(f)(2) could be that the materials are not taxable. We conclude, however, that the State's interpretation, which requires that the attachment of the materials result in a finished product that has functionality, aesthetic appeal, or usefulness *to the ultimate consumer* throughout the product's useful life, is not unreasonable and does not contradict the plain language of the statute. Under the dominant rules of statutory construction, therefore, we are effectively obligated to adopt the State's construction of the statute. *Texas Citizens*, 336 S.W.3d at 629 ("When, as here, a statutory scheme is subject to multiple interpretations, we must uphold the enforcing agency's construction if it is reasonable and in harmony with the statute."). Applying the State's construction, there remains no doubt that section 151.011(f)(2) does not apply to the transaction at issue in this case. The materials at issue here have little, if any, usefulness to the ultimate consumer. Accordingly, we are not authorized to use the statutory aid of "strict construction" in favor of the taxpayer.

For the foregoing reasons, we conclude that Chapal's use of the materials in this case does not qualify for the exclusion from the statutory definition of "use" contained in section 151.011 of the tax code. Because Chapal has not properly claimed any other exclusion or exemption in these proceedings, the State is entitled to judgment as a matter of law.

**CONCLUSION**

We reverse the trial court's order granting summary judgment in Chapal's favor and render judgment that Chapal take nothing by its suit for a refund of the use taxes paid on the materials for the period of January 1, 1994 through December 31, 1997.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Rendered

Filed:   November 18, 2011