**Affirmed and Memorandum Opinion filed January 18, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00242-CV

---

## RW TROPHY RANCH, LTD. AND ROBERT WILLIAMS, Appellants

### V.

## TEXAS ANIMAL HEALTH COMMISSION; ANDY SCHWARTZ, DVM, EXECUTIVE DIRECTOR; AND TEXAS PARKS & WILDLIFE DEPARTMENT, Appellees

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-22-000039**

## M E M O R A N D U M   O P I N I O N

This appeal arises from certain administrative agency actions taken to stop the spread of chronic wasting disease among white-tailed deer bred and owned by appellants RW Trophy Ranch, Ltd. and Robert Williams (together, "RW Trophy"). After these administrative actions were implemented, RW Trophy sued the Texas Animal Health Commission ("TAHC"), the TAHC executive director Andy Schwartz, and the Texas Parks and Wildlife Department ("TPWD"), challenging

certain agency rules and seeking a petition for writ of mandamus. The trial court granted the TAHC'S and Schwartz's plea to the jurisdiction and the agencies' summary judgment motions; RW Trophy filed this appeal. For the reasons below, we affirm.

## BACKGROUND

RW Trophy Ranch is a deer breeding enterprise in northeast Texas consisting of a 68-acre breeding facility surrounded by a 1,500-acre ranch.

Until the events described below, RW Trophy was certified under the TAHC's Texas Chronic Wasting Disease Herd Certification Program (the "Herd Certification Program"). *See Chronic Wasting Disease Herd Certification Program*, Texas Animal Health Commission, https://www.tahc.texas.gov/news/ brochures/TAHCBrochure_CWD-HCP-Compliance.pdf (last accessed January 9, 2024). The Herd Certification Program is a cooperative effort between the TAHC, the United States Department of Agriculture-Animal and Plant Health Inspection Service, and farmed cervid[1] producers. *Id*. The goal of the program is to provide a consistent national approach to control the incidence of chronic wasting disease ("CWD") in farmed cervids and prevent the disease's spread. *Id*.

CWD is a progressive neurodegenerative disease that affects cervid species, including deer, elk, reindeer, and moose. *See Chronic Wasting Disease*, Centers for Disease Control and Prevention, https://www.cdc.gov/prions/cwd/index.html (last accessed January 9, 2024). Symptoms include "drastic weight loss (wasting), stumbling, listlessness and other neurologic symptoms." *Id*. CWD is fatal to animals and there are no treatments or vaccines. *Id*.

In February 2021, three white-tailed deer in RW Trophy's breeding pens

---

[1] A "cervid" is a mammal in the deer family. *See Cervid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/cervid (last accessed January 9, 2024).

died of pneumonia. In accordance with the terms of the Herd Certification Program, RW Trophy tested the deer for CWD. One deer tested positive.

The TAHC issued a Hold Order in May 2021, instructing RW Trophy to restrict the movement of "all CWD susceptible species on the premises" pending the determination of disease status. In June 2021, the TAHC issued a Quarantine Order, instructing RW Trophy that all CWD-susceptible species were to be confined to the premises until the quarantine was released.

In August 2021, RW Trophy ante-mortem tested 49 bucks that it sought to release in advance of the upcoming hunting season. RW Trophy requested approval from the TAHC to release the bucks to the release site contiguous to the breeding facility. The TAHC responded that RW Trophy first must agree to a herd plan before any release from the breeding facility would be permitted.

RW Trophy received two proposed herd plans, one for its breeding facility and one for the release site. The breeding facility herd plan included a statement that RW Trophy's "herd certification status was lost upon the Facility being designated as a CWD positive herd." Both herd plans included a list of required actions, including that all RW Trophy's white-tailed deer be euthanized.

RW Trophy filed an "Appeal Notice for Cancellation or Suspension of CWD Herd Program Enrollment or Status." The Appeal Notice states:

> In accordance with Texas Administrative Code, Title 4, Part 2, §40.3, a Facility Owner may appeal the cancellation of enrollment of a herd, or loss or suspension of herd status. The Facility Owner must request a meeting, in writing, with the Executive Director of the Commission within 15 days of receipt of the action and set forth a short, plain statement of the issues that shall be the subject of the meeting. The appeal must include all the facts and reasons upon which Facility Owner relies to show that the reasons for the action are incorrect or do not support the action.

3

> A meeting will be set by the Executive Director no later than 21 days from receipt of the request. The meeting will be held in Austin, and the Executive Director will render the decision in writing within 14 days from the date of the meeting.

> If the Facility Owner wishes to appeal the decision or order by the Executive Director, the Facility Owner may file a written appeal within 15 days with the Chairman of the Commission and provide a short, plain statement of the issues that shall be the subject of the appeal.

> A subsequent hearing will be conducted pursuant to the provisions of the Texas Administrative Procedure Act and Texas Administrative Code, Title 4, Part 2, Chapter 32.

On the Appeal Notice, Williams hand-wrote "I object [to] the herd plan as is" and further stated that he "wish[es] to discuss the 49 bucks with non-detect rectal biopsies. I want to be able to release them by no later than September 20, 2021."

The TAHC convened a telephonic meeting with RW Trophy on September 17, 2021. The TAHC did not issue a written decision following the meeting nor did it hold a contested case or other evidentiary hearing.

RW Trophy filed suit in the Travis County district court in January 2022. In its original petition, RW Trophy requested a writ of mandamus compelling the TAHC executive director Andy Schwartz to provide it with a contested case hearing under the Administrative Procedure Act. RW Trophy also sought a declaration that certain administrative rules exceeded the TAHC's and the TPWD's statutory authority.

The TAHC and Schwartz filed a plea to the jurisdiction requesting the dismissal of RW Trophy's mandamus claims. The trial court granted the plea in an order signed September 28, 2022.

The TAHC and the TPWD filed individual motions for summary judgment with respect to RW Trophy's rule challenges. RW Trophy responded and filed a

4

cross-motion for summary judgment on its claims. In an order signed March 1, 2023, the trial court (1) granted the TAHC's and the TPWD's summary judgment motions, and (2) denied RW Trophy's cross-motion. RW Trophy timely appealed and the appeal was transferred to our court.[2]

ANALYSIS

RW Trophy raises two issues on appeal:

1. the trial court erred in granting in the TAHC's and Schwartz's plea to the jurisdiction; and

2. the trial court erred in granting the TAHC's and the TPWD's summary judgment motions and denying RW Trophy's cross-motion.

We address these issues below.

## I. Plea to the Jurisdiction

Citing 4 Texas Administrative Code section 40.3, RW Trophy argues that Schwartz had a mandatory duty to issue a written decision following the parties' September 2021 telephonic conference. *See* 4 Tex. Admin. Code § 40.3(h)(2)(c), (h)(4) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021).[3] Schwartz's failure to provide a written decision, RW Trophy contends, denied it the ability to pursue a contested case hearing before the State Office of Administrative Hearings with respect to the cancellation of its status under the Herd Certification Program. *See id.*

---

[2] The Supreme Court of Texas transferred this case from the Third Court of Appeals. *See* Tex. Gov't Code Ann. § 73.001. In cases transferred by the high court from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

[3] We cite to the version of the administrative rule in effect when RW Trophy filed its Appeal Notice and the parties had a telephonic conference.

RW Trophy sought mandamus relief on this basis in the trial court. The TAHC and Schwartz responded with a plea to the jurisdiction, asserting that RW Trophy failed to make the showing necessary to warrant mandamus relief. The trial court granted the plea to the jurisdiction and RW Trophy challenges this ruling on appeal.

Subject matter jurisdiction can be challenged by a plea to the jurisdiction, and we review *de novo* the trial court's ruling on the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Eshelman v. True the Vote, Inc.*, 655 S.W.3d 493, 497-98 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Where, as here, a jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227; *see also Tex. Dep't of Crim. Just. v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.—Austin 2004, no pet.). If the evidence creates a fact issue, then it must be resolved by the factfinder; but if the evidence is undisputed or fails to raise an issue of fact on the jurisdictional question, the trial court may rule on the plea as a matter of law. *Cooke*, 149 S.W.3d at 704-05.

Sovereign immunity protects the State of Texas and its agencies from suit and liability and thus is properly asserted in a plea to the jurisdiction. *Matzen v. McLane*, 659 S.W.3d 381, 387-88 (Tex. 2021); *Miranda*, 133 S.W.3d at 225-26. However, "[u]nder Texas law, suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity, even if a declaration to that effect compels the payment of money." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam) (internal quotation omitted). To fall within this *ultra vires* exception, the plaintiff's suit must allege and prove that the state officer acted

6

without legal authority or failed to perform a purely ministerial act. *Id.* Immunity is not waived when a plaintiff merely complains of an officer's exercise of discretion. *Id.*

"An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Hawkins v. Cmty. Health Choice, Inc.*, 127 S.W.3d 322, 326 (Tex. App.—Austin 2004, no pet.) (internal quotation omitted). In addition to the clear legal duty to perform a nondiscretionary act, the issuance of mandamus relief also requires a demand for performance and a subsequent refusal. *Id.*

Here, our analysis of RW Trophy's request for mandamus relief requires interpretation of an administrative rule. *See* 4 Tex. Admin. Code § 40.3(h) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021). We construe the text of an administrative rule *de novo* and under the same principles as if it were a statute. *Combs v. Chapal Zenray, Inc.*, 357 S.W.3d 751, 755 (Tex. App.—Austin 2011, pet. denied); *Phillips Petroleum Co. v. Tex. Comm'n on Env't Quality*, 121 S.W.3d 502, 507 (Tex. App.—Austin 2003, no pet.). Our primary objective is to give effect to the legislature's intent, using any definitions prescribed by the legislature and considering any technical or particular meanings the words have acquired. *Combs*, 357 S.W.3d at 755. Absent the provision of a legislative definition, we rely on the text's plain meaning unless a different meaning is apparent from the context or application of the literal language would lead to absurd results. *Id.* at 755-56.

In addition to these rules of construction, we must "bear in mind that an administrative agency has the power to interpret its own rules, and its interpretation is entitled to great weight and deference." *Id.* Accordingly, the agency's interpretation of its own rule is controlling unless it is plainly erroneous or

inconsistent — a principle particularly true "when the rule involves complex subject matter." *Id*.

The applicable version of Rule 40.3(h) provides, in relevant part, as follows:

(h)    Cancellation or suspension of enrollment by the Executive Director.  The Executive Director may cancel or suspend enrollment [in the Herd Certification Program] after determining that the herd owner failed to comply with any requirements of this chapter.  Before enrollment is cancelled or suspended, notification will be provided which will inform the herd owner of the reasons for the action.

> (1)    *The herd owner may appeal the cancellation of enrollment of a herd, or loss or suspension of herd status, by writing to the Executive Director within 15 days after receipt of the action.  The appeal must include all of the facts and reasons upon which the herd owner relies upon to show that the reasons for the action are incorrect or do not support the action*.

> (2)  The herd owner may request a meeting, in writing, with the Executive Director of the Commission within 15 days of receipt of the action and set forth a short, plain statement of the issues that shall be the subject of the meeting, after which:

> > (A)  the meeting will be set by the Executive Director no later than 21 days from receipt of the request for a meeting;

> > (B)  the meeting or meetings shall be held in Austin; and

> > (C)  *the Executive Director shall render his decision in writing within 14 days from the date of the meeting*.

> (3)    *Upon receipt of a decision or order by the Executive Director which the herd owner wishes to appeal*, the herd owner may file an appeal within 15 days in writing with the Chairman of the Commission and set forth a short, plain statement of the issues that shall be the subject of the appeal.

> (4)  *The subsequent hearing will be conducted pursuant to the*

8

> *provisions of the Administrative Procedure Act* and Texas
> Register Act and Chapter 32 of this title (relating to Hearing
> and Appeal Procedures).

*See* 4 Tex. Admin. Code § 40.3(h)(4) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021) (emphasis added).

According to RW Trophy, receipt of the breeding facility herd plan was its first notification that its status under the Herd Certification Program was cancelled. RW Trophy filed an Appeal Notice and the TAHC convened a telephonic meeting on September 17, 2021. Asserting that executive director Schwartz failed to perform his mandatory duty to "render a written decision within 14 days from the date" of this meeting, RW Trophy contends that Schwartz improperly foreclosed its ability to pursue an administrative hearing under the Administrative Procedure Act. *See* 4 Tex. Admin. Code § 40.3(h)(2)(C), (h)(4) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021).

We disagree these circumstances entitle RW Trophy to mandamus relief. Specifically, these allegations and the accompanying evidence, interpreted in conjunction with Rule 40.3, do not show that Schwartz failed to perform a purely ministerial act. *See Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 560.

Rule 40.3(h) provides an appeal's process for a herd owner "appeal[ing] the cancellation of enrollment of a herd, or loss or suspension of herd status." 4 Tex. Admin. Code § 40.3(h)(1) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021). As part of this process, the herd owner must include in its appeal "all of the facts and reasons upon which the herd owner relies to show that the reasons for the action are incorrect or do not support the action." *Id.*

9

Here, the breeding facility herd plan stated as follows with respect to the cancellation of RW Trophy's status under the TAHC Herd Certification Program:

> [RW Trophy] participates in the TAHC Herd Certification Program and, therefore, collected the above CWD sample in accordance with the TAHC Herd Certification Program. The sample was submitted for testing in March 2021. Trophy Ranch had attained fourth year status in the TAHC Herd Certification Program. That herd certification status was lost upon the Facility being designated a CWD positive herd.

Following receipt of the breeding facility herd plan, RW Trophy filed an Appeal Notice with the TAHC. Williams wrote on the Notice: "I object to the herd plan as is." In the portion of the Notice entitled "Statement of Issues Subject to Appeal," Williams wrote: "First, I Robert Williams, wish to discuss the 49 bucks with non-detect rectal biopsies. I want to be able to release them by no later than September 20, 2021."

By these statements in its Appeal Notice, RW Trophy indicated that it was not seeking to appeal the cancellation of its status under the Herd Certification Program or the specific reason given for the cancellation (*i.e.*, the sample that tested positive for CWD). Rather, RW Trophy stated that it sought to discuss a separate issue regarding the release of 49 bucks with non-detect rectal biopsies. Therefore, because the substance of RW Trophy's appeal was not the cancellation of its status under the Herd Certification Program, it was not proceeding under Rule 40.3(h)'s framework — which is tailored specifically to address this issue. *See* 4 Tex. Admin. Code § 40.3(h)(1) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021). Accordingly, RW Trophy cannot rely on this rule (or its requirement that the executive director issue a written decision) to support its claim for mandamus relief because its argument does not show that executive director Schwartz failed

10

to perform a ministerial act. *See Shamrock Psychiatric Clinic, P.A.*, 540 S.W.3d at 560.

We overrule RW Trophy's first issue challenging the trial court's order granting the TAHC's and Schwartz's plea to the jurisdiction.

## II.        Summary Judgment Motions

The TAHC, the TPWD, and RW Trophy filed individual summary judgment motions with respect to RW Trophy's rule challenges. In its second issue on appeal, RW Trophy asserts the trial court erred in granting the TAHC's and the TPWD's summary judgment motions and in denying its motion. RW Trophy raises four arguments as part of this issue, which we address individually.

But first, the applicable standard of review. When parties file cross-motions for summary judgment on overlapping issues and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and determine all questions presented. *Great-W. Life & Annuity Ins. Co. v. Tex. Att'y Gen. Child Support Div.*, 331 S.W.3d 884, 892 (Tex. App.—Austin 2011, pet. denied). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Great-W. Life & Annuity Ins. Co.*, 331 S.W.3d at 892.

Moreover, we analyze RW Trophy's arguments in light of the rules of interpretation set out above with respect to administrative rules. *See Combs*, 357 S.W.3d at 755; *Phillips Petroleum Co.*, 121 S.W.3d at 507. Generally, the party challenging an agency rule must show that the rule (1) contravenes specific

statutory language, (2) runs counter to the general objectives of the statute, or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions. *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017). This standard requires the challenging party to "show that the rule's provisions are not in harmony with the general objectives of the act involved." *Id.* (internal quotation omitted).

## A. "TAHC statutory authority is over livestock."

Asserting the TAHC's authority is limited to livestock, RW Trophy's first argument focuses on several provisions in the Texas Agriculture Code. Before summarizing these contentions, we begin with a legal precept that forms their basis: white-tailed deer, like those involved here, are considered "wildlife" under Texas law. *See Bailey v. Smith*, 581 S.W.3d 374, 390-93 (Tex. App.—Austin 2019, pet. denied). White-tailed deer are not included in the Texas Agriculture Code's definition of "animal" or "livestock." *See* Tex. Agric. Code Ann. § 161.001(1) ("'Animal' includes livestock, exotic livestock, domestic fowl, and exotic fowl."), (4) ("'Exotic livestock' means grass-eating or plant-eating, single hooved or cloven-hooved mammals that are not indigenous to this state and are known as ungulates . . . .").

Pointing to Rule 40.2, RW Trophy asserts the rule permits the TAHC to take certain actions that exceed its statutory authority, including:

- ordering that CWD-positive herds be restricted by quarantine until the herd meets all herd plan requirements (*see* 4 Tex. Admin. Code § 40.2(a)(3) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021));

- ordering that herds shall remain under quarantine for five years from the past exposure to a CWD-positive or a CWD-exposed animal and

12

until such time that all herd plan requirements have been met (*see* 4 Tex. Admin. Code § 40.2(b)(3) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021)); and

- ordering that the herd plan require that all CWD-exposed and -suspect animals be euthanized (*see* 4 Tex. Admin. Code § 40.2(c) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021)).

RW Trophy cites three sections of the Texas Agriculture Code to argue that these actions exceed the TAHC's statutory grant of authority.

First, RW Trophy relies on section 161.064, which states:

A quarantine that is established for any location has the effect of quarantining ***all livestock, domestic animals, or domestic fowl*** of the kind mentioned in the quarantine notice that are on or enter that location during the existence of the quarantine, regardless of who owns or controls the livestock, domestic animals, or domestic fowl.

Tex. Agric. Code Ann. § 161.064 (emphasis added). RW Trophy points out that white-tailed deer are not included in the definitions of "livestock, domestic animals, or domestic fowl," and argues that they therefore fall outside of the TAHC's quarantine jurisdiction.

Second, RW Trophy cites section 161.0415, which provides as follows with respect to animal slaughtering:

The [TAHC] by order may require the slaughter of ***livestock, domestic fowl, or exotic fowl***, under the direction of the [TAHC] . . . .

*Id*. § 161.0415(a) (emphasis added). Again, RW Trophy argues that white-tailed deer, as wildlife, fall outside the types of animals that may be slaughtered pursuant to an order issued by the TAHC.

Third, RW Trophy relies on section 161.061, which states that the TAHC may establish a quarantine to prohibit or regulate the movement of "any article or

13

animal that the commission designates to be a carrier of a disease . . . if movement is not otherwise regulated." RW Trophy asserts that white-tailed deer fall outside of this provision because their movement is regulated by the TPWD.

But these arguments ignore the import of section 161.041, entitled "Disease Control," which provides:

> (a)    The [TAHC] shall protect all livestock, exotic livestock, domestic fowl, and exotic fowl from diseases the commission determines require control or eradication. . . .
>
> (b)    The [TAHC] *may act to eradicate or control any disease or agent of transmission* for any disease that effects livestock, exotic livestock, domestic fowl, or exotic fowl, regardless of whether the disease is communicable, *even if the agent of transmission is an animal species that is not subject to the jurisdiction of the commission.* The commission may adopt *any rules* necessary to carry out the purposes of this subsection, including rules concerning testing, movement, inspection, and treatment.

*Id*. § 161.041(a), (b).    As our foregoing discussion shows, the TAHC has promulgated significant administrative rules with respect to CWD, thus indicating the disease's status as one the TAHC has "determine[d] require[s] control or eradication." *See id*. § 161.041(a); *see also* 4 Tex. Admin. Code chap. 40 (entitled "Chronic Wasting Disease").  Subsection (b) grants the TAHC broad authority to "control any disease or agent of transmission" by adopting "any rules," including rules pertaining to "testing, movement, inspection, and treatment." Tex. Agric. Code Ann. § 161.041(b).  Moreover, these rules may apply "even if the agent of transmission is an animal species that is not subject to the jurisdiction of the commission" — such as wildlife like white-tailed deer. *See id*.  Giving these terms their plain meanings, they encompass the actions in Rule 40.2 that RW Trophy seeks to challenge here with respect to herd plans, quarantine, and euthanizing white-tailed deer. *See id*.; *see also* 4 Tex. Admin. Code § 40.2(a)(3), (b)(3), (c)

14

(2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021).

We overrule RW Trophy's first argument.

### B.     "No TAHC Authority to Require Herd Plans."

Rule 40.2 states that CWD-positive and -trace herds are to be restricted until all herd plan requirements are satisfied.  *See* 4 Tex. Admin. Code § 40.2(a)(2), (3) (2013) (Tex. Animal Health Comm'n, Chronic Wasting Disease), *repealed by* 46 Tex. Reg. 6905, 6905 (2021).  These herd plan requirements may incorporate certain federal standards or testing requirements.  *See id.* § 40.2(b)(2).

In its second argument, RW Trophy asserts the TAHC lacks statutory authority to enforce a federal program in Texas.  RW Trophy cites to other statutes where cooperative agreements with the federal government have been specifically authorized.  *See, e.g.*, Tex. Agric. Code Ann. §§ 162.002 (authorizing a cooperative program for the eradication of tuberculosis), 163.002 (authorizing cooperative agreements to control bovine brucellosis).

But we disagree that the lack of a specific authorizing statute renders Rule 40.2's requirements regarding herd plans void.  As discussed above, Texas Agriculture Code section 161.041 has granted the TAHC broad authority to "control any disease or agent of transmission" by any means.  *See* Tex. Agric. Code Ann. § 161.041(b).  Herd plans' requirements with respect to controlling CWD fall within this grant of authority.  Accordingly, this argument fails to show that Rule 40.2's provisions regarding herd plans are not in harmony with the general objectives of the applicable statutory scheme.  *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 33.

We overrule RW Trophy's second argument.

15

C. **"The TAHC lacks the statutory authority to prevent the release of animals subject to quarantine to contiguous property under same ownership."**

RW Trophy's third argument is based on Texas Agriculture Code section 161.054, which states, in relevant part:

> The [TAHC] may not adopt a rule that prohibits a person from moving animals, including feral swine, owned by that person within unquarantined contiguous lands owned or controlled by that person.

Tex. Agric. Code Ann. § 161.054(c). RW Trophy contends that the TAHC may not prohibit it from releasing its white-tailed deer from the breeding facility to its contiguous release site.

We disagree with this reading of section 161.054(c). Section 161.054(c) says the TAHC may not prohibit animals' movement within "*unquarantined* contiguous lands." *Id*. (emphasis added). Giving these terms their plain meaning, they mean all lands across which movement is planned must be unquarantined. *See id*.

But here, the TAHC issued a quarantine order with respect to RW Trophy's breeding facility on June 8, 2021. There is no indication in this record that the quarantine order has been lifted. Therefore, because RW is seeking to move white-tailed deer from *quarantined* land to other land, it does not fall within section 161.054(c).

We overrule RW Trophy's third argument.

D. **"The TAHC cannot rely on TPWD rules to avoid section 161.054(c)."**

In its final argument, RW Trophy challenges three administrative rules promulgated by the TPWD. *See* 31 Tex. Admin. Code §§ 65.83(2), 65.91(d), 65.95(b)(3)(B), (C). RW Trophy raises contentions similar to those addressed

above, namely (1) the TAHC lacks the authority to require herd plans, (2) the TAHC lacks the authority to quarantine white-tailed deer, and (3) section 161.054(c) states that the TAHC may not prohibit animals' movement across "unquarantined contiguous lands."

We overruled these arguments for the reasons discussed above. Likewise, we conclude they do not warrant relief when read in conjunction with the cited TPWD administrative rules.

We overrule RW Trophy's fourth argument. Because we overrule all arguments raised as part of RW Trophy's second issue, we overrule the second issue in its entirety.

## CONCLUSION

We affirm the trial court's (1) September 28, 2022 order granting the TAHC's and Schwartz's plea to the jurisdiction, and (2) March 1, 2023 order granting the TAHC's and the TPWD's summary judgment motions and denying RW Trophy's cross-motion.


/s/     Meagan Hassan
Justice


Panel consists of Justices Hassan, Poissant, and Wilson.

17